[PUBLISH]

# In the
# United States Court of Appeals
## For the Eleventh Circuit

_____

No. 21-14257

_____

MICHAEL LAWRENCE CASSIDY,

            Petitioner-Appellant,

*versus*

SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS,

            Respondent-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 4:20-cv-00131-WS-HTC

_____

2                    Opinion of the Court                    21-14257

_____

No. 23-13367

_____

THERESA BATSON,

Petitioner-Appellant,

*versus*

FLORIDA DEPARTMENT OF CORRECTIONS,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 2:22-cv-14354-BB

_____

Before WILLIAM PRYOR, Chief Judge, and LUCK and HULL, Circuit
Judges.

WILLIAM PRYOR, Chief Judge:

These consolidated appeals require us to decide whether
two state prisoners' federal petitions for writs of habeas corpus are
timely. Theresa Batson and Michael Cassidy contend that their pe-
titions are timely because the state courts amended their

judgments and sentences after the vacatur of one count of their original judgments. *See* 28 U.S.C. § 2244(d). The district courts dismissed their petitions as untimely after deciding that the state courts issued those amended judgments and sentences *nunc pro tunc* to the date of their original judgments. We held, in *Osbourne v. Secretary, Florida Department of Corrections*, that we must defer to a state court's designation of an amended sentence as *nunc pro tunc*. 968 F.3d 1261, 1266–67, 1266 n.4 (11th Cir. 2020). Because the state court in Batson's case designated her amended sentences as *nunc pro tunc*, her federal petition is untimely. And because the state court in Cassidy's case did not designate his amended judgment and sentence as *nunc pro tunc*, his federal petition is timely. We affirm the dismissal of Batson's petition, but we vacate Cassidy's dismissal and remand for further proceedings.

## I. BACKGROUND

These consolidated appeals involve two state prisoners convicted of unrelated crimes: Theresa Batson and Michael Cassidy. Despite their separate factual and procedural histories, these appeals present overlapping questions about *nunc pro tunc* orders and when amended judgments and sentences restart the statute of limitations under the Antiterrorism and Effective Death Penalty Act. As background, we explain the facts that gave rise to Batson's appeal before doing the same for Cassidy's appeal.

### A. Batson's Appeal

Theresa Batson challenges her state convictions for soliciting the murder of her boyfriend and his brother. On May 20, 2010,

a jury convicted Batson on two counts of conspiracy to commit first-degree murder and two counts of soliciting first-degree murder. The state trial court entered a judgment and sentences against her on July 1, 2010. These documents adjudicated Batson guilty of all four counts and sentenced her to 30 years in prison on each count. Count one was a 30-year sentence; count two ran consecutive to count one; count three ran concurrent with count one; and count four ran consecutive to count one but concurrent with count two. So Batson faced a total sentence of 60 years in prison. The state appellate court affirmed and issued its mandate on May 25, 2012.

Batson next sought state post-conviction relief. On June 7, 2013, Batson filed a *pro se* motion for post-conviction relief under Florida Rule of Criminal Procedure 3.850 and alleged 19 claims of ineffective assistance of counsel. The state post-conviction court— a different court than her original trial court—dismissed this motion and a later amended motion. On February 1, 2017, the state appellate court reversed the denial of Batson's claim that her trial counsel was ineffective for failing to raise a defense of double jeopardy and remanded.

The post-conviction court entered an amended judgment on August 10, 2017, that vacated the guilty verdict on count one. The amended judgment restated that Batson was adjudicated guilty of counts two, three, and four but did not mention the sentences. The post-conviction court instructed the clerk on May 29, 2018, to prepare amended sentencing documents so that

"Counts 2 and 4 . . . run concurrently with each other but consecutive to the sentence imposed in Count 3." It entered the amended sentences on June 5, 2018, and designated them as *nunc pro tunc* to July 1, 2010. Clerical errors led to two additional rounds of amended sentencing forms on June 7, 2018, and June 14, 2018, and the court also marked these *nunc pro tunc* to July 1, 2010. The amended sentences state that "[t]he Defendant is hereby committed to the custody of the Department of Corrections."

The appellate court affirmed Batson's amended judgment and sentences and issued its mandate on November 30, 2018. The sentence for count two remained 30 years but now ran consecutive to count three and concurrent with count four; count three remained 30 years; and count four remained 30 years but now ran consecutive to count three and concurrent with count two.

Batson's later challenges to her amended judgment and sentences under state law were unsuccessful. The state appellate court issued its mandate affirming the denial of Batson's first post-amended-judgment motion on September 24, 2021, and rejected her motion to recall that mandate on November 15, 2021.

On October 10, 2022, Batson filed a *pro se* federal petition for a writ of habeas corpus that alleged ineffective assistance of appellate counsel. The state moved to dismiss the petition as untimely. It argued that more than a year of untolled time had passed since her original convictions became final and that the amended judgment and sentencing documents did not constitute a new

judgment because they related back to the original judgment *nunc pro tunc*.

The district court dismissed Batson's petition as untimely. It ruled that Batson's amended judgment and sentences related back to her original judgment because the state post-conviction court resentenced Batson *nunc pro tunc* and her prison term remained unchanged. It issued a certificate of appealability on one issue: "Did Petitioner's Amended Judgment and Sentence restart the federal limitations period under AEDPA?"

### B. Cassidy's Appeal

Michael Cassidy challenges his state convictions for molesting his family member. On May 30, 2012, a jury convicted Cassidy of three counts of sexual battery while in a position of familial or custodial authority. The trial court orally issued a sentence of 25 years in prison for count one, and a consecutive sentence of 10 years in prison for count two, followed by 15 years of probation for count three. On August 8, 2012, the court entered a written judgment that adjudicated Cassidy guilty and that same document also contained the sentencing forms. The written sentence entered on August 8, 2012, however, misstated the count one sentence as 35 years. Cassidy appealed the substance of his conviction but did not yet challenge that clerical error. The state appellate court affirmed and issued its mandate on February 7, 2014.

Meanwhile, the trial court separately corrected the sentencing error. Cassidy filed a motion on March 10, 2014, under Florida Rule of Criminal Procedure 3.800(c), to clarify that his total prison

sentence should last only for 35, not 45, years based on the oral sentence. The trial court entered an order on April 7, 2014, granting this motion and stating that it was "Nunc Pro Tunc." It then issued an amended sentence on May 16, 2014, that listed the correct sentence length of 25 years of imprisonment for count one and 10 years of imprisonment for count two to run consecutive to count one, followed by 15 years of probation for count three. Consistent with its *nunc pro tunc* nature, the amended sentence stated as follows: "DONE AND ORDERED in open court at Okaloosa County, Florida this 8th day of AUGUST 2012 and signed 16th day of May, 2014." August 8, 2012, is the date of the original sentences.

Cassidy later sought post-conviction relief in state court. He submitted a *pro se* motion for post-conviction relief on August 20, 2014, that alleged that his trial counsel had provided ineffective assistance. Following a limited evidentiary hearing, the state post-conviction court—the same trial court that had sentenced Cassidy—granted his motion in part on August 7, 2017. It ruled that Cassidy's trial counsel had been ineffective in his defense of count three when he failed to check or introduce exculpatory evidence of Cassidy's military deployment that had been provided to counsel more than a year before trial. These records established that Cassidy was in New Mexico during the time of the alleged molestation in count three. The court vacated "[t]he judgment and sentence imposed on [c]ount [three]," but it rejected the rest of Cassidy's claims. In response, the state dismissed *nolle prosequi* count three on August 28, 2017.

The state post-conviction court next entered an amended judgment titled "AMENDED JUDGMENT." Page one of the amended judgment left counts one and two unchanged but removed count three. Page two then reads "DONE AND ORDERED in open court in Okaloosa County, this 8th day of AUGUST 2012," followed by the sentence of the court. The same document also contains the "2ND AMENDED" sentence forms as pages four through six. Notably, the final page concludes as follows: "DONE AND ORDERED in open court at Okaloosa County, Florida this 8th day of AUGUST 2012 and signed ___ day of _____, 2014." Again, August 8, 2012, is the original sentencing date. Although the state post-conviction court left this signature date blank, it stamped page six with an e-signature dated October 10, 2017. The sentencing forms left the sentences on counts one and two unchanged but removed the probation sentence on count three. The state appellate court affirmed the denial of Cassidy's other claims and issued its mandate on March 7, 2019.

Cassidy filed a *pro se* federal petition for a writ of habeas corpus on March 6, 2020. The magistrate judge stayed this federal action while Cassidy exhausted his state post-conviction claims. Cassidy then filed an amended habeas petition on January 5, 2021. This petition raised a litany of constitutional objections to his conviction and detention—most of which overlapped with his original petition.

The state moved to dismiss the habeas petition as untimely. It argued that the operative judgment for the statute of limitations

is Cassidy's original judgment from 2012, not his amended judgment from 2017. And it contended that the amended judgment was a *nunc pro tunc* order that relates back to the date of the original judgment. Cassidy responded that the amended judgment could not be a *nunc pro tunc* order because the state court did not so designate it and that this kind of order is permitted only for correcting mistakes. He also argued that that his amended judgment reset the start of the federal statute of limitations.

The magistrate judge recommended denying the state's motion. She concluded that "a judgment consists of a conviction and a sentence and even when an amended judgment alters only the sentence and not the underlying conviction, the amended judgment is a new judgment which restarts the AEDPA clock." She did not address the *nunc pro tunc* issue.

The district court dismissed the petition as untimely. It reasoned that the state trial court never vacated Cassidy's original sentences on counts one or two, nor did it hold a resentencing hearing or otherwise alter the state's authority to confine Cassidy. The district court concluded that the state trial court "made clear" that the amended judgment was *nunc pro tunc* and that orders so designated are not new judgments. It later issued a two-question certificate of appealability: "(1) whether the state court's order dated October 10, 2017, was a *nunc pro tunc* order under state law; and (2) whether the state court's vacating of one count of a multi-count judgment created a new judgment under 2244(d) and 2254, thereby restarting the 1 year federal clock." We later consolidated Cassidy's appeal

with Batson's appeal to address the timeliness issues raised by the amended judgments.

## II. STANDARD OF REVIEW

We review *de novo* a petition's dismissal as untimely under section 2244(d). *Morris v. Sec'y, Fla. Dep't of Corr.*, 991 F.3d 1351, 1353 (11th Cir. 2021).

## III. DISCUSSION

Under the Antiterrorism and Effective Death Penalty Act, the timeliness of a state prisoner's federal petition is governed by the following statute of limitations: "A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court." 28 U.S.C. § 2244(d)(1). For both Batson and Cassidy, as state prisoners, that limitation period runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." *Id.* § 2244(d)(1)(A).

These appeals turn on whether the state courts designated the prisoners' amended judgments and sentences as *nunc pro tunc*. When a state court issues an amended judgment or sentence *nunc pro tunc*, our precedent requires us to accept that designation and refrain from evaluating whether it was proper under state law. *See Osbourne*, 968 F.3d at 1266–67, 1266 n.4. In *Osbourne*, we held that an amended sentence that a state court issued *nunc pro tunc* did not constitute a new judgment because it related back to the date of the original judgment. *Id.* at 1266–67. We did so without evaluating the validity of the *nunc pro tunc* designation under Florida law

21-14257                Opinion of the Court                11

because that matter was "best left to the province of the state court." *Id*. at 1266 n.4.

Although *Osbourne* requires us to defer to a state court's designation of an amended judgment or sentence as *nunc pro tunc*, *id*. at 1266–67, 1266 n.4, the state court must have, in fact, classified the order as *nunc pro tunc* for this deference to apply, *see id*. at 1266 (explaining that the date of the original judgment controlled "[i]n light of *the trial court's* nunc pro tunc designation *when issuing* Osbourne's amended sentence" (emphasis added)). Because the state court unambiguously issued Batson's amended sentences *nunc pro tunc*, her petition is untimely. But because the state court did not enter Cassidy's amended judgment *nunc pro tunc*, his petition is timely.

We divide our discussion into two parts. First, we explain why Batson's amended judgment and sentences did not restart the statute of limitations. Second, we explain why Cassidy's amended judgment restarted the statute of limitations.

### A. Batson's Amended Judgment and Sentences Did Not Reset the Statute of Limitations.

Resolution of the timeliness issue in Batson's appeal is straightforward under *Osbourne*. The state court checked the *nunc pro tunc* box on Batson's amended sentences but not on her amended judgment. Of those two documents, the amended sentences provided the authority to confine Batson when she filed her federal petition. *Osbourne* directs us to defer to the state court's

designation of them as *nunc pro tunc*. So Batson's amended sentences did not restart the federal statute of limitations.

As we held in *Patterson v. Secretary, Florida Department of Corrections*, "the only judgment that counts for purposes of section 2244 is the judgment 'pursuant to' which the prisoner is 'in custody.'" 849 F.3d 1321, 1326 (11th Cir. 2017) (en banc) (quoting 28 U.S.C. § 2254); *accord Ferreira v. Sec'y, Dep't of Corr.*, 494 F.3d 1286, 1293 (11th Cir. 2007) ("[T]he writ and AEDPA, including its limitations provisions, are specifically focused on the judgment which holds the petitioner in confinement."). And the content of the state orders makes clear that the amended sentences—not the amended judgment—are what confined Batson when she filed her federal petition. The amended sentencing forms state that "[t]he Defendant is hereby committed to the custody of the Department of Corrections." The amended judgment, in contrast, removed a vacated count from the list of Batson's convictions without mentioning or affecting her custody. The amended sentences' *nunc pro tunc* designation relates back to Batson's original judgment, so the statute of limitations did not reset.

*Osbourne* requires us to defer to the state court's designation of Batson's amended sentences as *nunc pro tunc*. As discussed earlier, *Osbourne* held that an amended sentence marked *nunc pro tunc* did not constitute a new judgment. 968 F.3d at 1267. We stated that "*the determining factor* as to whether the state court judgment is a 'new judgment' for purposes of § 2244(b) turns on the nunc pro tunc *designation*." *Id.* at 1266 (emphasis added). Because the *nunc*

*pro tunc* designation on Batson's amended sentences came from the state court, we must give it the dispositive weight that *Osbourne* did.

That the prisoner in *Osbourne* did not contest the validity of the state court's *nunc pro tunc* designation does not change that decision's binding effect. To be sure, *Osbourne* refrained from "opin[ing] as to whether the imposition of the amended sentence in his case was the proper or correct use of a nunc pro tunc designation under Florida law." *Id.* at 1266 n.4. But respect for state courts' primacy in interpreting state law—not the prisoner's forfeiture of the validity argument—compelled that restraint. *See id.* (citing *Coleman v. Thompson*, 501 U.S. 722, 731 (1991)). *Osbourne* deferred to the state court's *nunc pro tunc* classification because we recognized that "the propriety of labeling a Florida judgment 'nunc pro tunc' is a matter of state law." *Id.* Forfeiture did not change that this matter is "best left to the province of the state court." *Id.*

If Batson wanted to contest the validity of the state court's *nunc pro tunc* designation, she should have done so during her state appeal. *See id.* (noting that "Osbourne did not challenge the imposition of the amended sentence nunc pro tunc in state court, despite having the opportunity to do so"). We cannot second-guess the state court's *nunc pro tunc* designation, so the amended sentences that confine Batson *nunc pro tunc* to the date of her original judgment did not restart the federal statute of limitations.

B. *Cassidy's Amended Judgment Reset the Statute of Limitations.*

Resolution of the timeliness issue in Cassidy's appeal is more complicated than Batson's appeal. Because the state court did not issue Cassidy's amended judgment—which included his second amended sentence forms—*nunc pro tunc*, *Osbourne* does not limit the scope of our review as to whether the amended judgment restarted the federal statute of limitations. Cassidy's amended judgment constitutes a new judgment that restarted the federal statute of limitations under section 2244(d)(1)(A).

The state court in Cassidy's case did not issue his amended judgment *nunc pro tunc*. The absence of the phrase "*nunc pro tunc*" from the amended judgment is significant because the state court previously included that language when it made a clerical correction to Cassidy's sentence. Its 2014 order granting Cassidy's motion to clarify his sentence stated as follows: "DONE AND ORDERED in chambers, Nunc Pro Tunc, this 4th day of April, 2014." This wording establishes that the state court knew how to designate an order *nunc pro tunc*—something that it did not do when it later issued Cassidy's amended judgment and second amended sentence. And it makes the district court's later conclusion that the state court intended to issue the amended judgment *nunc pro tunc* solely because it left the date of the original judgment on the amended sentencing forms untenable.

Because *the state court* did not designate Cassidy's amended judgment as *nunc pro tunc*, we are not bound to defer to *the district court's* classification of it as *nunc pro tunc*. The district court was the

first court to classify Cassidy's amended judgment as a *nunc pro tunc* order. And our review of the district court's—instead of the state court's—understanding of whether an order was issued *nunc pro tunc* does not threaten the principles of comity that *Osbourne* sought to preserve. *See id.*

Our decision in *Ferreira v. Secretary, Department of Corrections* stated that the federal statute of limitations "focuse[s] on the judgment which holds the petitioner in confinement." 494 F.3d at 1293. We explained that there is only one judgment that confines a prisoner at any given time, and that judgment is made up of both the sentence and the conviction. *Id.* at 1292–93. So the "statute of limitations begins to run from the date both the conviction *and* the sentence the petitioner is serving at the time he files his application become final because judgment is based on both the conviction and the sentence." *Id.* at 1293.

The Supreme Court also made clear in *Magwood v. Patterson* that courts must focus on the judgment that confines a prisoner when he files his federal petition. 561 U.S. 320, 332–33 (2010). That decision involved a state prisoner whose petition was conditionally granted by the district court with instructions that he be released or resentenced. *Id.* at 326. After a resentencing hearing, he was sentenced to death. *Id.* He filed a second petition, but the state argued that this petition was barred under section 2244(b). *Id.* at 331. Focusing on the text, *Magwood* stressed that "[a] § 2254 petitioner is applying for something: His petition 'seeks *invalidation* (in whole or in part) *of the judgment* authorizing the prisoner's confinement.'"

*Id.* at 332 (quoting *Wilkinson v. Dotson*, 544 U.S. 74, 83 (2005)). After reasoning that "the existence of a new judgment is dispositive," the Court held that the prisoner's second petition was not barred because he had been resentenced and given a new, intervening judgment between his two petitions. *Id.* at 338–39. But *Magwood* left unresolved whether a prisoner can challenge "not only his resulting, *new* sentence, but also his original, *undisturbed* conviction." *Id.* at 342.

In *Insignares v. Secretary, Florida Department of Corrections*, we addressed the question that *Magwood* left open: whether it mattered that a prisoner contested a conviction that did not change because of the amended judgment. 755 F.3d 1273, 1280 (11th Cir. 2014). The prisoner in *Insignares* was sentenced to 27 years in prison based on a mandatory-minimum sentence of 20 years for attempted murder and a five-year suspended sentence for discharging a firearm. *Id.* at 1276–77. He filed a federal petition, but it was dismissed as untimely. *Id.* at 1277. The state court later reduced his mandatory minimum from 20 years to 10 years but left his 27-year sentence for attempted murder intact. *Id.* The prisoner filed a new federal petition and argued that it was not second or successive because the reduction of his mandatory-minimum sentence resulted in a new judgment. *Id.* We held that "when a habeas petition is the first to challenge a new judgment, it is not 'second or successive,' regardless of whether its claims challenge the sentence or the underlying conviction." *Id.* at 1281. The "basic proposition" that "there is only one judgment, and it is comprised of both the sentence and the conviction" preordained *Insignares*'s result. *Id.* We

also confirmed that *Ferreira* remained good law after *Magwood* because "resentencing results in a new judgment that restarts the statute of limitations." *Id.*

We later clarified that not every alteration to a sentence or conviction constitutes a new judgment. In *Patterson*, we held that an order that excused a prisoner from the chemical castration punishment outlined in his original sentence did not constitute a new judgment. 849 F.3d at 1326. This conclusion meant that his habeas petition was barred as "second or successive." *Id.* at 1328. Based on the text of section 2254, we explained that "the only judgment that counts for purposes of section 2244 is the judgment 'pursuant to' which the prisoner is 'in custody.'" *Id.* at 1326 (quoting 28 U.S.C. § 2254). The order prohibiting castration did not amend the prisoner's judgment of confinement; it stated only that he "shall not have to undergo chemical castration." *Id.* (alteration adopted) (internal quotation marks omitted). Patterson's original "commitment ha[d] never been vacated or replaced." *Id.* at 1325. We also explained that "Insignares had an intervening 'judgment authorizing [his] confinement,' but Patterson does not." *Id.* at 1326 (quoting *Insignares*, 755 F.3d at 1279).

To be sure, *Osbourne* made clear that "not every action that alters a sentence necessarily constitutes a new judgment for purposes of § 2244." 968 F.3d at 1265. No new judgment existed there because we treated the prisoner's amended sentence as relating back to the date of his original judgment and sentence. *Id.* at 1266. This decision was based on the state court issuing its changes to the

original sentence *nunc pro tunc*. *See id*. at 1266–67, 1266 n.4. The lack of an "intervening new judgment" again proved dispositive. *Id*. at 1267.

Based on these precedents, Cassidy's amended judgment is a new judgment under section 2244(d) for two reasons. First, Cassidy's appeal is distinguishable from *Patterson* because the state court vacated portions of Cassidy's original judgment and entered an amended judgment. Even though the unaffected counts still imposed the same prison term, the amended judgment replaced the original judgment. As *Magwood* explained, "the existence of a new judgment is dispositive." 561 U.S. at 338. Second, the most recent judgment controls the running of the limitations period. As we explained in *Insignares*, "there is only one judgment" that confines a prisoner. 755 F.3d at 1281. In the light of *Ferreira*'s explanation that the "statute of limitations begins to run from the date both the conviction *and* the sentence the petitioner is serving at the time he files his application become final," 494 F.3d at 1293, Cassidy's amended judgment was "the judgment" that he was "in custody pursuant to" when he filed his federal petition, 28 U.S.C. § 2244(d)(1). Because the vacated count no longer has any legal effect, it would be a strange outcome to hold that the original judgment that included that now-defunct count supersedes the amended judgment that includes only the remaining valid counts. After all, "the judgment to which AEDPA refers is the underlying conviction and *most recent* sentence that authorizes the petitioner's current detention." *Ferreira*, 494 F.3d at 1292 (emphasis added).

The Secretary contends that because Cassidy's amended judgment "left the sentences for [the remaining counts] unaffected," it "should not be considered to have reset the AEDPA limitations period." But we have rejected this approach as inconsistent with the statutory text. *See Insignares*, 755 F.3d at 1281 (explaining that in *Ferreira*, "we saw no reason to differentiate between a claim challenging a conviction and one challenging the sentence"). What matters is whether the state court vacated at least part of the original judgment and entered an amended judgment that confines the prisoner going forward. What does not matter is whether certain convictions in the amended judgment never changed.

## IV. CONCLUSION

We **AFFIRM** the order dismissing Batson's petition. We **VACATE** the order dismissing Cassidy's petition and **REMAND** for further proceedings.

21-14257                HULL, J., Concurring                1

HULL, Circuit Judge, specially concurring:

I concur in full in the Court's opinion except for Part III.B regarding Cassidy's appeal.  I concur only in the judgment for Part III.B for several reasons.

First, in my view, the clear intent of the state court was to enter Cassidy's final amended judgment and sentence *nunc pro tunc* because in two places the state court dated the final amended judgment and sentence as "DONE AND ORDERED" on August 8, 2012, the date of his original sentencing.  The Court's opinion bases its ruling on the absence of the words *nunc pro tunc*.  I concur in the judgment because I can appreciate the Court's reliance on that bright-line rule and reluctance to divine the intent of the state court on this matter.  *See Osbourne v. Sec'y, Fla. Dep't of Corr.*, 968 F.3d 1261, 1266–67, 1266 n.4 (11th Cir. 2020).

Second, I see a principled basis for possibly distinguishing *Magwood v. Patterson*, 561 U.S. 320 (2010), and *Insignares v. Secretary, Florida Department of Corrections*, 755 F.3d 1273 (11th Cir. 2014), but here again I respect the Court's disinclination to do so.  Here is why I view those decisions as arguably different from this case.  The death-sentenced petitioner in *Magwood* received a full resentencing hearing after the district court conditionally granted the writ of habeas corpus as to the death sentence and mandated that the petitioner either be released or resentenced.  561 U.S. at 323, 326.  After a new sentencing hearing, the district court resentenced the petitioner to death.  *Id.*  *Magwood* involved a truly new sentence and

thus a truly new judgment as the result of a sentencing hearing and deliberation.

Similarly, *Insignares* involved a truly new prison sentence and judgment entered after the state court reduced the petitioner's mandatory-minimum sentence from 20 years to 10 years for his attempted murder conviction, which he sought to challenge in his subsequent federal habeas petition. 755 F.3d at 1276–77.

In contrast here, Cassidy is serving the same undisturbed sentences originally imposed in 2012 on his same undisturbed convictions on counts one and two. The convictions and sentences on counts one and two were never vacated and remain unchanged. Practically speaking, what has occurred is, in effect, merely an administrative or clerical restatement of the same original convictions and original sentences imposed in 2012. The prison sentences are the same in the amended judgment and not new sentences in a new judgment. Yet Cassidy may now file an otherwise untimely § 2254 petition challenging undisturbed convictions and sentences over a decade later, well beyond the one-year federal limitations period. *See* 28 U.S.C. § 2244(d)(1). Although § 2244(d)(1)'s purpose is to ensure finality of state and federal judgments, *see Duncan v. Walker*, 533 U.S. 167, 178 (2001), this result does just the opposite.

Finally, because I view *Insignares* as potentially distinguishable, I am more inclined to follow the approach of the Seventh Circuit in *Turner v. Brown*, which rejected a habeas petitioner's argument that his resentencing on one count of a multi-count conviction "reset the clock for calculating [the] statute of limitations"

21-14257                    HULL, J., Concurring                    3

because "the relief he was granted . . . was limited to his *robbery* conviction, whereas his habeas petition challenges his conviction and life sentence for *murder*," which had not changed. 845 F.3d 294, 297 (7th Cir. 2017) (emphasis added); *see also Romansky v. Superintendent Greene* SCI, 933 F.3d 293, 300–01 (3d Cir. 2019) (holding that a petitioner's § 2254 petition was untimely because his "resentencing did not impose a new judgment as to the undisturbed counts of conviction" which he sought to challenge). Nevertheless, I recognize we do not write on a clean slate, and thus I concur in the judgment as to Part III.B.